IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 11-cv-02434-WYD-MEH

CARL GENBERG,

     Plaintiff,

v.

STEVEN S. PORTER; an individual,
JEFFREY SPERBER; an individual,
AL BAUTISTA; an individual,
MICHELE DARNAUD; an individual,
CHERYL HOFFMAN-BRAY; an individual,
PHILIPPE GASTONE; an individual, and,
MARC REDLICH, an individual,

     Defendants.

_____

**ORDER**
_____

THIS MATTER is before the Court on:  (1) Defendant Marc Redlich's Motion To Dismiss Second Amended Complaint [ECF No. 84]; (2) defendants Steven S. Porter, Jeffrey Sperber, Alberto Bautista, Michel Darnaud, Cheryl Hoffman-Bray, and Philippe Gastone's Motion to Dismiss [ECF No. 85]; and, (3) plaintiff, Carl Genberg's, Motion To Compel Arbitration [ECF No. 107].  For the reasons stated below:  (1) Carl Genberg's, Motion To Compel Arbitration [ECF No. 107] is DENIED; (2) Redlich's Motion To Dismiss Second Amended Complaint [ECF No. 84] is GRANTED; and, (3) defendants Steven S. Porter, Jeffrey Sperber, Alberto Bautista, Michel Darnaud, Cheryl Hoffman-Bray, and Philippe Gastone's Motion to Dismiss [ECF No. 85] is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On April 16, 2012, plaintiff, Carl Genberg, filed a Second Amended Complaint ("SAC") [ECF No. 77] against Steven S. Porter, Jeffrey Sperber, Al Bautista, Michele Darnaud, Cheryl Hoffman-Bray, Philippe Gastone, and Marc Redlich, alleging a Colorado state law defamation claim and violations under the whistle-blower protection provisions of the Sarbanes-Oxley Act ("SOX") of 2002, 15 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), 15 U.S.C. § 78u-6.

Genberg worked for Ceragenix Corporation and Ceragenix Pharmaceuticals, Inc. (collectively "Ceragenix") from January 1, 2005, to March 28, 2010, as the Senior Vice President for Research and Development. Ceragenix Pharmaceuticals, a Delaware corporation, became a public company in April 2005 through a reverse merger with Onsource Corporation ("Onsource"). In the reverse merger, Onsource acquired Osmotics Pharma, Inc., a subsidiary of Osmotics Corporation, and Onsource transferred 92% of its shares to Osmotics Corporation. The end result of the reverse merger was that Osmotics Pharma, Inc., became Ceragenix Corporation, and Onsource became Ceragenix Pharmaceuticals.

Subsequent to the reverse merger, Osmotics Corporation executed a Plan of Distribution. Under the Plan of Distribution, Osmotics Corporation placed over 12 million Ceragenix Pharmaceuticals (formerly Onsource) shares in a custodial account awaiting final distribution to Osmotic Corporation's shareholders that chose to exchange their shares for shares in Ceragenix Pharmaceuticals. At the time Osmotics Corporation executed the Plan of Distribution, Francine S. Porter, Osmotics

Corporation's Chief Executive Officer, represented to the shareholders that all shares in the custodial account would be distributed within one year. Osmotics Corporation granted Ceragenix Pharmaceuticals's Board of Directors ("BOD") the irrevocable power to vote the shares of Ceragenix Pharmaceuticals held in the custodial account. Thus, though Osmotics Corporation owned the over 12 million Ceragenix Pharmaceutical shares held in the custodial account, Osmotics Corporation's shareholders had no voting power with respect to those shares.

By 2009, Osmotics Corporation had not executed the Plan of Distribution. Genberg believed that executing the Plan of Distribution was necessary to raise capital for Ceragenix Pharmaceuticals. With that in mind, Genberg approached his friend and one of the largest owners of Osmotics Corporation shares, Joseph Salamon. Genberg proposed that Salamon create his own plan for exchanging his Osmotics Corporation shares for Ceragenix Pharmaceuticals shares, and present the plan to Osmotics Corporation's BOD. Salamon created a plan and authorized Genberg to present the plan to Steven S. Porter ("Porter"), Ceragenix's Chief Executive Officer. Genberg presented the plan to Porter and Porter rejected it. Further, Porter accused Genberg of providing material non-public information to Salamon to induce him to make an offer. Porter then launched an internal investigation regarding Genberg's conduct. The investigation, led by Ceragenix's outside counsel, revealed that Genberg did not disclose material non-public information to Salamon.

According to Genberg, Ceragenix violated Delaware corporate law by failing to hold annual shareholder meetings in 2005, 2006, 2007, 2009, and 2010. Genberg alleges that Ceragenix held a shareholder meeting in 2008, but violated the Security

and Exchange Commission's ("SEC") rules on proxy voting by allowing its BOD to vote the shares in the custodial account on a "non-routine" matter without instruction of the beneficial owners of the shares *i.e.*, Osmotics Corporation's shareholders.

Ceragenix's Code of Good Business Conduct requires employees to report any perceived violations of the spirit or letter of the law to supervisory personnel.  Pursuant to this mandate, Genberg spoke to Ceragenix's management and revealed that the corporation allegedly violated Delaware corporate law and SEC proxy rules. Management did not take action.  Genberg then spoke to Salamon and requested that Salamon write a letter to Ceragenix's BOD raising the same concerns.  After the two met, Genberg drafted an email that Salamon sent under his name to Ceragenix's BOD. [ECF No. 98-1].  The memo was dated March 3, 2010.  On March 4, 2010, Genberg sent a letter [ECF No. 77-3, pp. 14-15 and ECF No. 77-4, pp. 1-2] to Cheryl Hoffman-Bray, member of the Ceragenix's BOD and head of the Audit Committee, revealing that Porter had engaged in insider trading and committed several other federal securities violations.

Due to the concerns raised by Genberg's letter, Ceragenix launched an investigation.  Defendant, Marc Redlich, headed the investigation.  Redlich interviewed Genberg and eventually found out that Genberg authored the March 3, 2010, letter allegedly authored by Salamon.  On March 17, 2010, Redlich disclosed the results of his investigation to Ceragenix's BOD.  According to Redlich, Genberg had not committed malfeasance or violated his fiduciary duties to Ceragenix.  Genberg alleges that Ceragenix's BOD informed Redlich that he needed to find grounds that Genberg "violated his fiduciary obligation" to the corporation.  Redlich subsequently released a

new report on March 19, 2010, concluding that Genberg had violated his fiduciary obligation to the corporation.

On March 26, 2010, Ceragenix's BOD held a special teleconference meeting to discuss Genberg's letters and Redlich's report.  The BOD agreed to terminate Genberg for cause.  On March 26, 2010, Porter wrote a letter to Genberg stating that the BOD agreed to terminate him for breaching his fiduciary duty of loyalty.  The letter also stated that the BOD based its decision on Redlich's report.

On March 28, 2010, Porter sent an email to a non-party in which he refers to Genberg as "Judas" and states that Genberg attempted to facilitate a hostile takeover of Ceragenix.

On April 9, 2010, Genberg filed a demand for arbitration with the American Arbitration Association, alleging that Ceragenix terminated him in violation of the whistle-blower protection provisions of SOX.  On April 12, 2010, Genberg filed a complaint with the Occupational Safety and Health Administration ("OSHA") alleging his termination violated SOX.  On May 3, 2010, the American Arbitration Association dismissed Genberg's arbitration demand because Ceragenix failed to pay the required filing fees.  On June 2, 2010, Ceragenix filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Colorado.

 On July 11, 2011, Genberg filed this suit in the United States District Court for the District of Nevada [ECF No. 1-1].  Porter filed a Motion to Transfer Venue and on September 6, 2011, this suit was transferred to the United States District Court for the District of Colorado [ECF No. 1].   On April 16, 2012, Genberg filed his SAC [ECF No. 77] alleging a Colorado state law defamation claim and violations of SOX and the DFA.

On May 3, 2012, Redlich filed a Motion to Dismiss [ECF No. 84] arguing that this Court lacks subject matter jurisdiction over Genberg's SOX claim against Redlich because Genberg failed to exhaust administrative remedies by failing to name Redlich as a respondent in the OSHA complaint.  That same day, Porter, Sperber, Bautista, Darnaud, Hoffman-Bray, and Gastone filed a Motion To Dismiss [ECF No. 85] arguing that:  (1) this court lacks subject matter jurisdiction over Genberg's SOX claims because he failed to exhaust administrative remedies by not naming any of the defendants, except Porter, in his OSHA complaint; and, (2) Genberg's DFA retaliation claim fails because Ceragenix's failure to pay Genberg post-termination salary pursuant to the employment contract is due to Ceragenix's bankruptcy proceedings and bankruptcy law, not Porter and Sperber's alleged retaliation.

On July 11, 2012, Genberg filed a Motion For Partial Summary Judgment [ECF No. 92] arguing that he is entitled to summary judgment on his SOX claim against Bautista, Hoffman-Bray, Darnaud, Gastone, and Porter.

On January 10, 2013, I issued an Order To Show Cause [ECF No. 106] directing the parties to show cause in writing why the parties should not proceed to arbitration pursuant to Provision 12 of the employment contract. ECF No. 89-2, p. 20, ¶ 12. Genberg responded that the parties, except Redlich, should proceed to arbitration on all claims except the DFA retaliation claim.  The defendants responded, except Redlich, that they are not subject to the employment contract's arbitration clause and that Genberg waived any right to proceed to arbitration.

# ANALYSIS

## A. Genberg's Motion To Compel Arbitration [ECF No. 107]

The arbitration clause in Genberg's employment contract with Osmotics Pharma, Inc., now Ceragenix Corporation[1], states that:

> 12. Governing Law.  This Agreement shall be governed by, construed and interpreted in accordance with the laws of the State of Colorado without regard to such State's principles and conflict of laws.  The parties hereto consent to submit any dispute arising out of or related to this Agreement to binding arbitration before a panel of 3 arbitrators in accordance with the then existing rules of arbitration of the American Arbitration Association.  The venue of any such proceeding shall be in Denver, Colorado.  The prevailing party shall be entitled to recover his reasonable attorney's fees and costs, including the cost of travel in the event that the Executive does not reside in Denver, Colorado.

ECF No. 89-2, p. 20, ¶ 12.  On January 18, 2013, Genberg filed a Motion To Compel Arbitration [ECF No. 107], arguing that:  (1) all claims in the SAC [ECF No. 77], except the DFA retaliation claim, are arbitrable pursuant to the employment contract's arbitration clause; and, (2) all defendants, except Redlich, are bound to arbitrate his claims.  The defendants, except Redlich, filed a Response to Genberg's Motion To Compel Arbitration [ECF No. 114] arguing that:  (1) Genberg waived his right to proceed to arbitration; (2) Genberg's SOX and DFA claims are statutorily precluded from arbitration; and, (3) the defendants are neither the alter ego of Ceragenix nor are they third party beneficiaries of Genberg's employment contract, and therefore they cannot be compelled to arbitrate.

Arbitration arises from a contract between parties, and therefore "a party cannot be forced to arbitrate any issue he has not agreed to submit to arbitration." *Commun.*

---

[1] For clarity and efficiency, I will refer to Osmotics Pharma, Inc. as Ceragenix.

*Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1300 (10th Cir. 2012) (citing *AT & T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 648 (1986)).  "The question of who may be bound to an arbitration provision is governed by state law relating to contracts in general." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. Appx. 704, 708 (10th Cir. 2011) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).  "[W]hen the requirement to arbitrate is created by an agreement, it can be invoked only by a signatory of the agreement, and only against another signatory." *Smith v. Multi-Financial Secs. Corp.*, 171 P.2d 1267, 1272 (Colo. App. 2007) (citation omitted).  "Nonetheless, based on common law contract principles, nonsignatories may be bound by agreements to arbitrate.  Courts have bound nonsignatories to arbitration agreements under principles of agency, incorporation by reference, veil-piercing, assumption or implied conduct, estoppel, successor in interest, and third-party beneficiary." *Id.* (citations omitted); *see also* 31-903 MOORE'S FEDERAL PRACTICE – Civil § 903.06 ("A non-signatory to an arbitration agreement may be bound to arbitrate under general contract law and agency principles").

There is no dispute that Porter and Genberg are the only signatories to the employment contract. ECF No. 89-2, p. 23.  Porter's signing of the employment contract as Ceragenix's agent does not automatically render him susceptible to the contract's arbitration clause.  Circumstances above and beyond a mere signature as an agent must be present before any discussion regarding the agent's susceptibility to an arbitration clause begins.  Because the other named defendants are not signatories to the employment contract, I begin my analysis under the presumption that they are not bound by the employment contract's arbitration clause.  Further, because Porter's mere

signature is insufficient to generate susceptibility to the arbitration clause, he is included in the analysis below as it relates to "the defendants."  All parties agree that Redlich is not bound by the arbitration clause and therefore I will not address arbitration as it relates to Redlich.

Genberg argues that the defendants, though non-signatories to the employment contract (except Porter), may be compelled to arbitrate Genberg's claims because they are Ceragenix's alter ego.  Genberg presents an abundance of alter ego black letter law, but presents little analysis as to how the defendants would qualify as Ceragenix's alter ego.  In support of his argument, Genberg provides a transcript of in-court statements from an August 31, 2011, hearing before Judge Sidney B. Brooks of the United States Bankruptcy Court for the District of Colorado regarding Ceragenix's bankruptcy.  The statements are from a conversation between Judge Brooks and Ceragenix's counsel in which Judge Brooks comments on the nature of Ceragenix's corporate management.  In the transcript, Judge Brooks refers to "Exhibit 3" and states that what he read in Exhibit 3 was "textbook language for establishing alter ego . . . " ECF No. 107-1, p. 5, ll. 9-10.  However, Genberg presents no information as to what Exhibit 3 actually is.  I cannot discern what Exhibit 3 is from the transcript and I will not speculate as to its substance.  Thus, I have no context in which to place Judge Brooks's comments and I will not rely on them to conclude that the defendants are Ceragenix's alter ego.  Genberg's filings do not persuade me that the defendants, each of whom were high ranking employees, were Ceragenix's alter ego.

Genberg also argues that the defendants may be compelled to arbitrate because they are third party beneficiaries of the employment contract between Genberg and

Ceragenix.  "While an individual not a party to the contract generally cannot be compelled to arbitration, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the parties to the contract so intend." *Daugherty v. Encanan Oil & Gas, Inc.*, 2011 U.S. Dist. LEXIS 76802, *18 (D. Colo. July 15, 2011) (citations omitted).  "[T]he intent to create a third-party beneficiary must be apparent from the terms of the contract or the surrounding circumstances." *Winter Park Real Estate & Invs., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. App. 2007) (citing *City & Cnty. of Denver v. Dist. Court*, 939 P.2d 1353, 1363 (Colo. 1997)).  Neither Genberg nor Ceragenix intended that the defendants be third-party beneficiaries of the employment contract.  Any benefit the defendants received from the employment contract was incidental.  The employment contract defines the rights and obligations between *Genberg and Ceragenix*.  The employment contract does not mention any of the defendants and it does not manifest any intention by Genberg or Ceragenix to impart a benefit to the defendants, other than the far attenuated and normal value of an employee fulfilling his job duties.  Thus, any benefit received by the defendants is incidental and insufficient to render the defendants third party beneficiaries.

Porter's mere signing of the employment contract does not render him susceptible of the arbitration clause, and there are no facts that would support the conclusion that he was Ceragenix's alter ego or a third party beneficiary of the employment contract.  The defendants are neither Ceragenix's alter ego, nor are they third party beneficiaries of the employment contract.  Therefore, I cannot compel the defendants, as non-signatories, to arbitrate Genberg's claims.  Because the defendants are neither Ceragenix's alter ego nor third party beneficiaries of the employment

contract, I need not address the defendants' arguments regarding waiver and the inapplicability of arbitration to Genberg's SOX and DFA retaliation claims.  Accordingly, Genberg's Motion To Compel Arbitration [ECF No. 107] is DENIED.

## B.  The Defendants' Motions to Dismiss [ECF Nos. 85 & 85]

### 1.  Genberg's SOX Claim

Under the whistle-blower protection provision of SOX, companies may not discharge, demote, suspend, threaten, or harass any employee who provides information or causes information to be provided, files or causes to be filed, testifies, participates in, or assists any investigation regarding an alleged violation of certain enumerated federal securities laws or SEC rules or regulations. 18 U.S.C. § 1514A(a).

The defendants move this Court to dismiss Genberg's SOX claim pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) .  Specifically, the defendants argue that Genberg failed to exhaust administrative remedies because he did not specifically name each of the defendants, except Porter, in his OSHA complaint [ECF No. 85-1].  Because the United States Court of Appeals for the Tenth Circuit treats failure to exhaust administrative remedies under similar statues as jurisdictional, I will treat the defendants' failure to exhaust argument as a motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). *Jones v. UPS, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (internal quotations and citations omitted) ("Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit.  In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit"); *Smith v. Potter*, 252 Fed. Appx. 224, 227 (10th Cir. 2007) ("Federal courts do not have subject-matter jurisdiction to review Title VII and ADEA claims not exhausted

administratively").

### a. Legal Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

When a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack is either a facial attack to the allegations of the complaint or a factual attack. *Osborn v. United States*, 918 F.2d 724, 731 n.6 (8th Cir. 1990). "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Where there is a facial attack, the Court must look to the factual allegations of the complaint. *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971). When analyzing facial attack pursuant to FED. R. CIV. P. 12(b)(1), the Court "must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002.

In a factual attack, as is the case here, the Court may consider matters outside the pleadings, and the motion is not converted to a motion for summary judgment. *Holt*, 46 F.3d at 1003; *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Holt*, 46 F.3d at 1003. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborne*, 918 F.2d at 730 (internal quotations and citation omitted).

### b. Failure to Exhaust Adminstrative Remedies

Pursuant to SOX:

> A person who alleges discharge or other discrimination by
> any person in violation of subsection (a) may seek relief
> under subsection (c), by--
>
> > (A) filing a complaint with the Secretary of Labor; or
> >
> > (B) if the Secretary has not issued a final decision
> > within 180 days of the filing of the complaint and there
> > is no showing that such delay is due to the bad faith
> > of the claimant, bringing an action at law or equity for
> > de novo review in the appropriate district court of the
> > United States, which shall have jurisdiction over such
> > an action without regard to the amount in controversy.

18 U.S.C. § 1514A(b)(1).  OSHA is the division of the Department of Labor that is

responsible for performing investigations of complaints filed under SOX. *Morrison v.*

*MacDermid, Inc.*, 2008 U.S. Dist. LEXIS 78110, *8 (D.Colo.).  Thus, SOX's plain

language dictates that a plaintiff alleging a SOX violation must exhaust his

administrative remedies by filing a complaint with OSHA.

The defendants argue that while Genberg filed an OSHA complaint, the

complaint is inadequate to support a SOX claim against the defendants because

Genberg failed to specifically name each defendant, except Porter, in the OSHA

complaint.  In support of their argument, the defendants cite several non-controlling

district court cases from different circuits. *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp.

2d 1282, 1357 (N.D. Ga. Sept. 12, 2006) ("As the Plaintiff did not specifically name

Pead and Dagher in the OSHA proceedings, he, thus, failed to exhaust his

administrative remedies with respect to them"); *Thanedar v. Time Warner Cable, Inc.*,

2008 U.S. Dist. LEXIS 112745, *37 (S.D. Tex. Oct. 7, 2008) ("A party who is not named

in an [OHSA complaint] may not later be sued in federal court"); *Smith v. Psychiatric Solutions, Inc.*, 2009 U.S. Dist. LEXIS 27608, *26 (N.D. Fla. Mar. 31, 2009) ("Smith did not name PBS or GCTC in the heading of her administrative complaint or indeed *anywhere* in her complaint. Thus, Smith is unable to establish a claim against either of these defendants due to her failure to properly exhaust her administrative remedies with respect to them"); *Bridges v. McDonald's Corp.*, 2009 U.S. Dist. LEXIS 118597, *11 (N.D. Ill. Dec. 21, 2009) ("Requiring that an aggrieved employee name not only the corporate defendant but also an individual defendant affords OSHA the opportunity to adjudicate claims with respect to the specific individual. Thus, even if the individual was placed on constructive notice by being named as an actor in a complaint, courts consistently have emphasized that failing to name the individual as a respondent deprives *OSHA* of the opportunity to resolve the employee's allegations with respect to the individual").

Genberg neither names Redlich as a respondent nor does Genberg mention Redlich's name in the OSHA complaint. Genberg also did not name Sperber, Bautista, Darnaud, Hoffman-Bray, or Gastone as respondents nor does he mention them in the body of his OSHA complaint. Though not controlling, I find the case law cited by the defendants persuasive. OSHA is a United States administrative agency responsible for analyzing a large volume of workplace complaints. OSHA is not charged with the task of deducing from a complaint every possible respondent. To a large extent, the OSHA complainant frames the OSHA investigation by naming certain respondents. Genberg's OSHA complaint does not name any of the defendants named in this present action, except Porter. OSHA was not on notice that Genberg would name Redlich, Sperber,

Bautista, Darnaud, Hoffman-Bray, and Gastone as defendants in a future action and therefore Genberg failed to exhaust administrative remedies as to these defendants. However, Genberg properly named Porter as a respondent in the OSHA complaint and therefore Genberg exhausted his administrative remedies as to Porter.

Genberg argues that his "filing of the Demand for Arbitration satisfied his requirement to 'exhaust administrative remedies.'" ECF No. 89, p. 8, ¶ 2. I disagree. Filing a demand for arbitration does not allow a party to circumvent a statutory requirement to exhaust administrative remedies. Thus, Genberg's argument is unpersuasive.

I find that Genberg failed to exhaust his administrative remedies with respect to Sperber, Bautista, Darnaud, Hoffman-Bray, and Gastone because he failed to name them as respondents or mention them at all in his OSHA complaint. Genberg named Porter as a respondent in the OSHA complaint and therefore exhausted his administrative remedies as to his SOX claim against Porter. Therefore, the defendants Motion To Dismiss [ECF No. 85] is GRANTED to the extent that the defendants seek dismissal of Genberg's SOX claim against Sperber, Bautista, Darnaud, Hoffman-Bray, and Gastone. The motion is DENIED to the extent that the defendants seek dismissal of Genberg's SOX claim against Porter.

## 2. Genberg's Dodd-Frank Act Claim Against Porter and Sperber

Genberg alleges that Porter and Sperber retaliated against him in violation of the DFA by failing to pay Genberg post-termination wages mandated by Genberg's employment contract. In their Motion To Dismiss [ECF No. 85], the defendants argue that Genberg fails to state a claim for relief under the DFA because: (1) Genberg does

not qualify as a "whistleblower" under the DFA because he did not provide information

to the SEC; and, (2) Ceragenix's failure to pay Genberg's post-termination wages was

not retaliation, it was the result of Ceragenix's bankruptcy proceedings.

### a. Legal Standard for a Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6)

FED. R. CIV. P. 12(b)(6) provides that a defendant may move to dismiss a claim

for "failure to state a claim upon which relief can be granted."  "The court's function on a

Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at

trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003) (citations and quotation marks omitted).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937 (2007).

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I "must

accept all the well-pleaded allegations of the complaint as true and construe them in the

light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344,

1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997)(citations omitted).  The plaintiff

"must include enough facts to 'nudge[] [his] claims across the line from conceivable to

plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Conclusory allegations are not

sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068

(10th Cir. 2009); *see also Twombly*, 550 U.S. at 546 (2007) (The plaintiff's burden

"requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do").  General allegations "encompass[ing] a wide swath of conduct, much of it innocent" will fail to state a claim.  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

### b.  Genberg's *Prima Facie* Case

Pursuant to the DFA:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower--
>
> > (i)  in providing information to the Commission in accordance with this section;
> >
> > (ii)  in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
> >
> > (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A).  Because the DFA took effect on July 22, 2010, there is not an abundance of case law analyzing the act.  In *Nolliner v. Southern Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995 (M.D.Tenn. 4/3/2012), the Court detailed the essential elements of DFA retaliation claim, and I agree with the Court's statement on the elements of such a claim.  In order to prevail on a DFA retaliation claim, a plaintiff must show:  (1) he reported an alleged violation to the SEC or another entity, or internally to management; (2) he was retaliated against for reporting the alleged

violation; (3) the disclosure of the alleged violation was made pursuant to a rule, law, or regulation subject to the SEC's jurisdiction; and, (4) the disclosure was required or protected by that rule, law, or regulation within the SEC's jurisdiction. *Id.*

### i. Reporting the Alleged Violation

There is dispute that Genberg reported Ceragenix's alleged federal securities law violations. However, the defendants argue that even though Genberg disclosed alleged federal securities law violations, his DFA retaliation claim fails because he does not fall under the category of persons that the statute defines as whistleblowers.

Under the DFA, "[t]he term 'whistleblower' means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6). Thus, the DFA's plain language mandates that in order to qualify as a whistleblower, one must provide information to the SEC regarding an alleged federal securities law violation. Genberg does not allege that he provided the SEC with any information. Rather, he states that he qualifies as a whistleblower under the DFA pursuant to § 78u-6(h)(1)(A)(iii). This DFA provision provides whistleblower protection to those persons who do not provide information to the SEC, as long as they make:

> disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A)(iii). Thus, this DFA provision is in direct conflict with the

DFA's definition of a whistleblower because it provides protection to persons who have not disclosed information to the SEC.  Three federal district courts have addressed this precise issue and all three hold that § 78u-6(h)(1)(A)(iii) is a narrow exception to the DFA's whistleblower definition in § 78u-6(a)(6). *Egan v. Tradingscreen, Inc.*, 2011 U.S. Dist. LEXIS 47713, *13 (S.D.N.Y. May 4, 2011) ("The contradictory provisions of the Dodd-Frank Act are best harmonized by reading 15 U.S.C. § 78u-6(h)(1)(A)(iii)'s protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to 15 U.S.C. § 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC"); *Nolliner*, 852 F. Supp. 2d at 994 (Quoting *Egan* and holding that a plaintiff qualifies as a whistleblower under § 78u-6(h)(1)(A)(iii) of the DFA even if he has not disclosed information to the SEC, provided that the information disclosed "relates to a violation of federal securities laws"); *Kramer v. Trans-Lux Corp.*, 2012 U.S. Dist. LEXIS 136939, *13 (D.Conn. Sept. 25, 2012) (Quoting *Egan* and holding that § 78u-6(h)(1)(A)(iii) of the DFA is an exception to the whistleblower definition in § 78u-6(a)(6)).

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted). *See also Bridger Coal Co./Pacific Minerals, Inc. v. Director, Office of Workers' Comp. Programs*, 927 F.2d 1150, 1153 (10th Cir. 1991) ("We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous"); *Federal Deposit Ins. Corp. v. Canfield*, 967 F.2d 443, 447 (10th Cir. 1992) (citation omitted) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or

superfluous").  Following this principle, I find that the defendants' interpretation of the

DFA would render § 78u-6(h)(1)(A)(iii) inoperable and moot.  I agree with the other

federal district courts that § 78u-6(h)(1)(A)(iii) should be interpreted as an exception to

the whistleblower definition found in § 78u-6(a)(6).  Therefore, I find that Genberg

qualifies as a whistleblower under the DFA because he disclosed alleged federal

securities violations to Ceragenix's upper level management.  Thus, Genberg may

proceed with his DFA retaliation claim under § 78u-6(h)(1)(A)(iii) even though he has

not provided the SEC with any information regarding alleged federal securities law

violations.

### ii.  Retaliation for Disclosing Alleged Federal Securities Law Violations

Genberg alleges that Porter and Sperber retaliated against him by failing to

authorize post-termination payments mandated by the Genberg's employment contract.

Specifically, Genberg alleges that Porter and Sperber's failure to authorize post-

termination payments for each pay period following July 21, 2010, is a separate act of

retaliation under the DFA.  Genberg's employment contract states, in pertinent part:

> In the event of a termination for Just Cause, the Corporation
> shall continue to pay Executive's then current Base Salary
> until the issuance of an arbitration award affirming the
> Corporation's action.  Such arbitration shall be in accordance
> with the Rules of the American Arbitration Association then
> in effect.  The arbitration shall take place in Denver,
> Colorado before a panel of 3 arbitrators at the earliest
> possible date . . . The cost of the arbitration proceeding
> including filing fees and arbitrators' compensation shall be
> borne by the Corporation.

ECF No. 89-2, p. 20, ¶ 9.  The defendants argue that the non-authorization of post-

termination payments is not a retaliatory act against Genberg for disclosing alleged

violations of federal securities laws, but rather, it is the result of Ceragenix's bankruptcy

proceedings.  I agree.

Ceragenix filed for bankruptcy on June 2, 2010.  Genberg alleges that Porter and

Sperber's failure to authorize post-termination payments for each pay period following

July 21, 2010, is a separate act of retaliation under the DFA.  Genberg's claim is a post-

petition claim:  it arises subsequent to the initiation of Ceragenix's bankruptcy

proceedings.  "In general, a debtor may pay most postpetition obligations, including

compensation and benefits that are earned postpetition, in the 'ordinary course of

business.'" SP1 – Monograph1 COLLIER on BANKRUPTCY Section 4.  While Genberg's

post-termination salary may be "owed" to him, such salary was not "earned" after

Ceragenix initiated bankruptcy proceedings.  Further, Genberg's claim for post-

termination payments does not qualify as an "administrative expense."  Pursuant to the

United States Bankruptcy Code,

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including--
>
> (1)
>
> > (A) the actual, necessary costs and expenses of preserving the estate, including--
> >
> > > (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
> > >
> > > (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board . . .

11 U.S.C. § 503(b)(1)(A).  As previously stated, Genberg did not work for Ceragenix

after it filed bankruptcy, therefore Genberg is not owed salary for "services rendered

after the commencement of the case." *Id*.  Further, no wages have been awarded to

Genberg pursuant to a judicial proceeding or a proceeding of the National Labor

Relations Board.  Thus, of the applicable Bankruptcy Code sections defining allowable

administrative expenses, Genberg's post-termination payments fall into neither

category.

Ceragenix's bankruptcy is a valid defense to Porter and Sperber's alleged non-

authorization of Genberg's post-termination payments.   The Bankruptcy Code's

provisions do not allow payment for a claim of this type.  Because the Bankruptcy Code

precluded Ceragenix from paying Genberg post-termination payments, I find that

Genberg cannot satisfy this element of his DFA claim against Porter and Sperber.

Therefore, my analysis of Genberg's DFA claim ends here.  Accordingly, the

defendants' Motion To Dismiss [ECF No. 85] is GRANTED to the extent that the

defendants seek dismissal of Genberg's DFA claim against Porter and Sperber.

**C.  Genberg's Motion For Partial Summary Judgment [ECF No. 92]**

Genberg argues that he is entitled to summary judgment on his SOX claim

against Bautista, Hoffman-Bray, Darnaud, Gastone, and Porter.  Because Genberg

failed to exhaust administrative remedies with respect to Bautista, Hoffman-Bray,

Darnaud, Gastone, I need only analyze this motion for partial summary judgment as it

pertains to Porter.

### 1.  Legal Standard for a Motion for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Horizon/CMS Healthcare*, 220 F.3d at 1190.  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party." *Horizon/CMS Healthcare*, 220 F.3d at 1190.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Atl. Richfield Co.*, 226 F.3d at 1148 (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

### 2.  Genberg's SOX Claim

In order to prevail on a SOX claim pursuant to 18 U.S.C. § 1514A(a), a plaintiff must establish that:  (1) he engaged in protected activity; (2) his employer knew or suspected that he engaged in protected activity; (3) he suffered an adverse action; and, (4) the circumstances are sufficient to raise the inference that the protected activity was a contributing factor in the adverse action. 29 C.F.R. § 1980.104(e)(2).

Genberg's chief allegation in the SAC is that Ceragenix, and Porter as a Ceragenix's CEO, terminated him for informing Ceragenix's upper level management

that Porter had engaged in insider trading and that Ceragenix had violated several federal securities violations.  The defendants respond to Genberg's Motion for Partial Summary Judgment [ECF No. 92] arguing that Ceragenix's BOD terminated Genberg "for conspiring with outsiders to orchestrate a hostile takeover of Ceragenix." ECF No. 98, p. 3, ¶ 2.  Porter corroborates this in his Declaration [ECF No. 98-2].  Porter declares that "Mr. Genberg was terminated for the role he played in attempting to coerce a hostile takeover of Ceragenix by outside investors with whom he had a relationship." ECF No. 98-2, p. 2, ¶ 9.  Sperber also declares that Ceragenix's BOD terminated Genberg for his role in an attempted hostile takeover of Ceragenix. ECF No. 98-3, p. 2, ¶ 9.  Further, Porter declares that he himself, as Ceragenix's CEO and member of Ceragenix's BOD, did not take part in the vote to terminate Genberg. *Id.* at ¶ 4 ("Because I was not an independent member of the Board, I was required to abstain, and did abstain, from any votes on matters regarding employee compensation and termination decisions.  Indeed, I abstained from voting on the decision to terminate Plaintiff Carl Genberg").  The defendants' response, along with Porter and Sperber's declarations, bear directly on whether Genberg's alleged protected activity was a contributing factor in his termination and create genuine issues of material fact as to the fourth element of Genberg's SOX claim.  Because genuine issues of material fact exist as to whether Genberg's alleged protected activity was a contributing factor in his termination, Genberg is not entitled to partial summary judgment on his SOX claim against Porter.  Therefore, Genberg's Motion For Partial Summary Judgment [ECF No. 92] is DENIED.

**CONCLUSION**

After careful consideration of the matters before this Court, it is

ORDERED that Genberg's Motion To Compel Arbitration [ECF No. 107] is

**DENIED**.  It is

FURTHER ORDERED that Redlich's Motion To Dismiss Second Amended

Complaint [ECF No. 84] is **GRANTED**, and Genberg's SOX claim against Redlich is

**DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that Porter, Sperber, Bautista, Darnaud, Hoffman-Bray,

and Gastone's Motion To Dismiss [ECF No. 85] is **GRANTED IN PART** and **DENIED IN**

**PART**.  Regarding Genberg's SOX claim, the motion is **GRANTED** to the extent that

Sperber, Bautista, Darnaud, Hoffman-Bray, and Gastone seek dismissal of Genberg's

SOX claim against them, and that claim is **DISMISSED WITH PREJUDICE**.  The motion

is **DENIED** to the extent that Porter seeks dismissal of the Genberg's SOX claims

against him.  Regarding Genberg's DFA claim against Porter and Sperber, that claim is

**DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that Genberg's Motion For Partial Summary Judgment

[ECF No. 92] is **DENIED**.

Dated:  March 25, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge